UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:18-CR-006 |
| | ) | |
| JOHNATHAN L. THOMAS | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the defendant's *pro se* motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [Doc. 530].[1] The United States has responded in opposition to the motion [docs. 532, 536], and the defendant has submitted a reply. [Doc. 542]. For the reasons stated below, the defendant's motion for compassionate release will be denied.

### I. BACKGROUND

In February 2019, the Honorable Thomas W. Phillips sentenced the defendant to a below-guidelines term of 151 months' imprisonment for methamphetamine and firearm offenses. According to the Bureau of Prisons ("BOP"), the defendant is presently incarcerated at FCI Coleman Low with a scheduled release date of January 15, 2029. *See* Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 8, 2020).

The defendant now moves for immediate compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018. He asks for release

---

[1] The Court deems the instant motion as having been filed *pro se*, and the Court has considered the motion with the deference traditionally afforded to such filings, despite the defendant's admission that the motion was "[p]repared with the assistance of Frank L. Amodeo," a self-described "post-conviction advocate." [Doc. 1, p. 13]; *see also* Meet Frank Amodeo, https://www.correctinginjustice.com/about (last visited July 2, 2020).

based on his asthma, the current COVID-19 pandemic, and his purportedly low risk of recidivism, which he argues are "extraordinary and compelling reasons" under § 3582(c)(1)(A).

On April 21, 2020, the defendant submitted a request for compassionate release to the warden of his BOP facility. [Doc. 532, ex. 1]. That request was denied on May 12, 2020. [*Id.*].

## II. DISCUSSION

Section 3582(c)(1)(A)(i) allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Beyond

2

this change, the statute still applies the same statutory requirements to a defendant's motion for compassionate release as previously applied to motions by the BOP Director. *See, e.g.*, *United States v. Beck*, 425 F. Supp. 3d 573, 578-79 (M.D.N.C. 2019).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. *See United States v. McGraw*, No. 2:02-cr-00018-LJM-CMM, 2019 WL 2059488, at *3 (S.D. Ind. May 9, 2019). While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *Id*. at *2 (citations omitted). Moreover, the Court has no reason to believe that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider. *See id.* (concluding likewise).

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A)(i), the compassionate release analysis requires several findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether a movant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

3

## A. Exhaustion

In this case, the record demonstrates that the defendant has previously asked the BOP to file a compassionate relief request on his behalf. Thirty days have passed since that request was received by the warden of his facility. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

## B. Merits

### 1. Extraordinary and Compelling Reasons

The Application Notes to guideline 1B1.13 provide, in material part:

1. Extraordinary and Compelling Reasons.— ... [E]xtraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n.1(A).

The instant motion appears to be based on Application Note 1(A)(ii)(I), which requires a serious medical condition that substantially diminishes the ability to provide self-care within the prison environment and from which the movant is not expected to recover. Specifically, the defendant cites his asthma which, he alleges, if paired with "a COVID infection likely proves fatal." [Doc. 530, p. 1].

Medical records provided by the United States document that the defendant has suffered from asthma since childhood. [Doc. 536]. On November 27, 2019, the defendant reported no shortage of breath or other symptoms. [*Id.*]. He "[a]ppear[ed] well" and was instructed by the BOP physician to use his inhaler as needed. [*Id.*]. On November 13, 2019, the defendant reported that his last asthma attack was in January of 2019. [*Id.*].[2]

Having considered the medical record before it, the Court does not find that the defendant's medical condition *substantially* diminishes his ability to provide self-care within the prison environment. His asthma appears to be under control and the condition is being monitored by the BOP. The defendant's asthma does not at this time appear to be a condition of the severity contemplated by guideline 1B1.13's policy statement, nor has it been shown to be the "crippling, debilitating disease" alleged by the defendant. [Doc. 530, p. 6].

Further, on the record before it, the Court cannot concur that the COVID-19 pandemic is "likely," as also alleged by the defendant, to result in his "execution by disease." [*Id.*, p. 7]. Only one inmate at the defendant's prison has tested positive, and that person has recovered. Four staff have tested positive, with an additional two staff members having

---

[2] The defendant states that medical records are attached to his motion as Exhibit 1, but he did not in fact provide any exhibits to the Court. [Doc. 530, p. 1].

recovered.  *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 7, 2020).  These minimal numbers illustrate that that the preventative measures being taken by the Bureau of Prisons, as described by the United States in its response brief, are having an effect.  *See, e.g., United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020) (medically managed serious health conditions, paired with a generalized fear of COVID-19, fell short of "extraordinary and compelling reasons" justifying compassionate release).

### 2. **Danger to Any Other Person or to the Community**

In the alternative, the Court also finds that the defendant has not shown that he would not be a danger if released.  Guideline 1B1.13 provides that compassionate release is only appropriate where "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(2).  Section 3142(g) outlines the factors the Court must consider in determining whether a defendant should be detained pending trial.  Specifically, § 3142(g) provides:

> (g) Factors to be considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The Court has considered the above-listed factors and has familiarized itself with the defendant's Presentence Investigation Report ("PSR"). The PSR categorized the defendant as a Criminal History Category III. [Doc. 331]. In this case, the defendant actively participated in a conspiracy to distribute a substantial quantity of methamphetamine and he aided and abetted the possession of a firearm in furtherance of that conspiracy. [*Id.*]. There are two prior controlled substance convictions, and the defendant was on probation for each of those crimes when he committed the instant offenses. [*Id.*]. All of these events occurred *after* the defendant was diagnosed with his purportedly debilitating asthma.

Based on the Court's review of all of the § 3142(g) factors, but most particularly due to the nature of the instant offenses, the defendant's prior controlled substance convictions, and his history of misconduct while on probation, the Court is not persuaded that the defendant would not pose a danger to the safety of another person or the community

7

if released. For this additional reason, the motion must be denied.

### 3. Section 3553(a) Factors

Because the defendant has not demonstrated extraordinary and compelling reasons justifying his release, and because the Court is not satisfied that he would not pose a danger if released, the Court finds it unnecessary to engage in a lengthy discussion of the 18 U.S.C. § 3553(a) factors in this case. Suffice it to say that the bulk of the defendant's sentence remains unserved. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("Despite Kincaid's assertion that the amount of time served is not a proper basis for denying compassionate release, the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). As in *Kincaid*, a substantial sentence reduction in this case would not reflect the seriousness of the offenses of conviction, would not promote respect for the law or afford adequate deterrence, and would not adequately protect the public from future crimes. *See* 18 U.S.C. § 3553(a)(2).

## III. CONCLUSION

For the reasons stated herein, Defendant's motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [doc. 530] must be and is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge